

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Orville S. Carpenter
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:

Opinion No. 0-2007
Re: The application of the
Texas Unemployment Com-
pensation Act to various
situations concerning
husband and wife.

We have your request for an interpretation of the law
applicable to the various questions asked under four fact situa-
tions outlined in your letter.

Your fact situation No. 1 in your letter reads:

"H and W are husband wife. W has not been de-
clared a sole trader by decree of court. W enters into
a partnership agreement with A for the operation of an
interior decorating business, including the sale of
merchandise in connection therewith. The agreement makes
A and W equal partners. The capital of the business is
money borrowed from the bank by W upon the basis of her
own credit. A gives W his promissory note, payable in
monthly installments, in an amount equal to one-half of
the total capital of the business. A and W devote their
full time to the business.

"H takes no part in the interior decorating busi-
ness and always recognizes W's earnings or profits
therefrom as her separate property. W represents to
partnership creditors that she and her separate property
are liable for business debts of the partnership. A
and W have always had seven persons in their employment,
while H, who is engaged in another business which he
owns as his separate property, has always employed
five individuals.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT.

We will state each question and answer it as they appear in your letter in numerical order.

Question (a): "Is W legally a partner with A in the interior decorating business?"

"Technically, a married woman may be a merchant or trader at will, so far as the immediate transaction of the business is concerned." See 23 Tex. Jur. p. 304. The authorities in Texas are generally agreed that the very nature of a mercantile business is such that a married woman cannot be called a partner. She, obviously, cannot do the things essential to a commercial success. On the basis of the facts stated, we do not think W is legally a partner at the time the business is formed, although at that time she has borrowed money at the bank to be paid back out of the profits from her business. Profits of the business are community property. See Speer's "Law of Marital Rights in Texas", p. 367. Unless there is a clear intention to repay borrowed money out of separate property the new acquisition becomes community. See also Speer, supra, Section 430 and the cases there cited. No such intention appears here.

Question (b): "If not, is H a partner with A in that business?"

We think not. H has in no way recognized or taken part in starting the partnership business. W has represented to her creditors that she and her separate property are liable for the partnership debt. She borrowed the money upon the basis of her own credit. Certainly W has not bound H by her promise to repay the bank the money borrowed. The law is well settled in this State that the wife can only bind the husband for necessaries. The money borrowed was for speculation in business. H may not be made a partner in this business against his desire and consent even though he may have a community interest in the partnership because of the nature of the capital invested. He does have an interest in the partnership in the sense that he would share in the community profits but he can not be made a partner in the strict legal sense against his own will and consent. His interest is a legal incident and not contractual.

Question (c): "If H is a partner with A, is W in the employment of the partnership of H and A?"

Since we have answered the next preceding question in the negative, this inquiry need not be answered. However, the

Hon. Orville S. Carpenter, page 3

status of W, a married woman is likened to that of a creditor of the partnership by the authorities of this State. See 23 Tex. Jur. p. 307 and the authorities there cited.

> Question (d): "If W is in the employment of the partnership of H and A, what is the measure of contribution with respect to W's employment?"

An answer to this question is obviated by our reply that W is not employed in the partnership.

> Question (e): "If W is legally a partner, are her earnings or profits from the interior decorating business community property subject to the control of H?"

We think, under the facts given, the earnings or profits, if you have used these words synonymously, are community property and are subject to the control of H. This is true whether W is a partner or not in the absence of a gift of the profits by H. Schwethelm vs. Schwethelm, 1 S. W. (2d) 911; A. B. Richards Med. Co. vs. Jennings, 283 S. W. 296; 1st National Bank vs. McWhorter, 179 S. W. 1147.

> Question (f): "Can H legally give to W all of his and the community interest in her future or profits from the partnership?

Postnuptial contracts are not favored by the courts of this state, but they will be enforced when they are patently just and fair and do not withdraw the funds from existing creditors, see Green v. Ferguson, 62 Tex. Rep. 525; Cox v. Miller, 54 Tex. Rep. 16.

H and W cannot by agreement between themselves change the character of their property so as to convert the community into separate, or the separate into community. See 23 Tex. Jur. p. 28; McDonald v. Stevenson, 254 S. W. 777. They are free to make gifts of their property, of either class, to each other. 23 Tex. Jur., Sec. 18, also Sec. 49.

> Question (g): "In the absence of such a gift, what is the ownership of stocks of goods bought out of the partnership earnings to replenish the shelves and there comingled with other goods in such a way as not to be identifiable?"

The ownership of such goods is in A and in H and W as husband and wife as community property. Schwethelm v. Schwethelm,

Hon. Orville S. Carpenter, page 4


L. S. W. (2d) 911; 1st National Bank vs. McWhorter, 179 S. W.
1147.

> Question (h): "Would the situation be changed if
> H made daily gifts to W of any interest which he
> might have in the profits or earnings of the
> partnership business?"

Most assuredly yes. The profits belonging to the community would then become W's separate property.

> Question (i):  "Does Subsection 19 (f)(4) of the
> Texas Unemployment Compensation Act (Art. 5221-b-17
> (f) (4) apply to the facts stated to render both
> the partnership and H 'employers'?"

Article 5221-b-17 (f) (4) reads as follows:

> "Any employing unit which together with one or
> more other employing units, is owned or controlled
> (by legally enforceable means or otherwise) directly
> or indirectly by the same interest, or which owns or
> controls one or more other employing units (by legally
> enforceable means or otherwise), and which, if
> treated as a single unit with such other employing
> unit, would be an employer under paragraph (1) of
> this subsection;"

We presume that your reference is to the facts stated in fact situation No. 1. We have held that H was not a partner at the inception of the partnership. If H makes a daily gift of the community profits he has acquired no controlling interest as required in the above quoted section. The business of H cannot then be grouped with the partnership to render both concerns liable for taxes. On the other hand, if there was no gift of the profits and the stock had been turned and new stock purchased with the profits, the stock has then become community. Whether H is a partner or not he has by reason of the marriage contract and the status of the property control of this property under the definition of an employer as quoted in Section 17 (f) (4) of Article 5221-b and Section 17 (e) of Article 5221-b, which reads as follows:

> "'Employing unit' means any individual or type of
> organization, including any partnership, association,
> trust, estate, joint-stock company, insurance company,
> or corporation, whether domestic or foreign, or the
> receiver, trustee in bankruptcy, trustee or successor
> thereof, or the legal representative of a deceased per-
> son, which has or subsequent to January 1, 1936, had in

Hon. Orville S. Carpenter, page 5

its employ one or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all purposes of this Act. Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this Act, whether such individual was hired or paid directly by such employing unit or by such agent or employee, provided the employing unit had actual or constructive knowledge of the work."

The statute is exceedingly broad in its language, and if the interest of E and W is community under our statutes, H has the control as specified in Section 17 (f) (4) of Article 5221-b.

Under these circumstances, both H and the partnership are liable for taxes on their particular payroll.

Question (j): "Would the subsection mentioned apply if W's contribution to the capital of the partnership amounted to more than one-half of the total capital?"

In the light of our other answers we think it unnecessary to answer this question.

Question (k): "If W had been declared by the court to be a sole trader, how would it affect the answer to question (i)?"

If W has been legally freed of the disabilities of coverture, she can be and is a partner. The authorities in Texas agree that after the emancipation by compliance with the statutory means the wife is liable on her contract and the husband is not liable for the contract of the wife in her trading business. See Stevens vs. Lilley, 7 S. W. (2d) 883; Speer's "Law of Marital Rights in Texas", Section 290.

However, the emancipation is not, by the authorities of Texas, considered a general one but is limited to the purpose for which it is sought. See 23 Tex. Jur. Sec. 269. There is nothing in the act that would indicate an intention to alter the status of profits of an enterprise as community property. The Legislature would have no power to do so for the character of those profits or acquisitions is fixed by Article 16, Section 15 of our Texas Constitution.

Hon. Orville S. Carpenter, page 6

In Article 4619 of Vernon's Revised Civil Statutes, the Legislature, by the codification of 1925, again placed the control of the community in the husband. In 23 Tex. Jur. Sec. 67, it is stated that as an incident to the power of disposition the husband may have the exclusive control and management of the community property; that he may reduce the community property to possession, employ servants, agents or make concessions regarding the operation of the property. But this general control does not give him the power to partition the community from the separate property of himself or of the wife. Ochoa v. Edwards, 189 S. W. 1022.

The question of whether H has control of the partnership of W and A is then a question of fact. Has H made daily gift of the profits to W? If he has and those gifts are continuing at this time H has no control or ownership of the partnership. It must be shown that profits belonging to the community have gone back into the business and that they can be traced to establish them as a part of the capital, H does then have control in spite of the emancipation of W.

Fact situation No. 2.

"H and W are husband and wife. H operates a business which was purchased with community funds of H and W. W operates an apartment house on land which she holds by deed from H granting her a life estate in consideration of ten dollars paid out of her separate estate, with remainder to H upon her death. The number of individuals in her employment, when added to the number of individuals in H's employment is more than eight. This situation obtains throughout the year."

"Does Subsection 19 (f) (4) of the Texas Unemployment Compensation Act (Art. 5221-b-17 (f) (4) ) apply to render both H and W employers?"

Again, the answer to your question will depend upon the existing facts arising out of the operation of the apartment house by W. If, in the operation of same, profits are made, they then become community without regard to the life estate of W in the apartment house. If, in the operation of the apartment house, W uses those profits or earnings in the operation of the apartment house they are community and will in time become the capital investment.

If, on the other hand, there are not any profits from the operation of the apartment house there is no theory upon which H has any community interest in the apartment house and therefore he has no control or ownership of it. If that be true, the units may not be grouped together for the purpose of assessment and collection of unemployment compensation taxes.

Fact situation No. 3:

"H and W, husband and wife, own and operate two cafes, X and Y, as community property during the year 1937. On December 31, 1937, W is declared a sole trader by the court, and on January 1, 1938, H transfers all of his interest in Cafe X to W, reciting that he thereby relinquishes all claims to future earnings or profits to be derived from the operation of Cafe X. At the same time W makes the same sort of transfer to H of all of her interest in Cafe Y. The number of people employed during 1938 in each of the cafes is five."

"Does Subsection 19 (f) (4) of the Texas Unemployment Compensation Act (Art. 5221-b-17 (f) (4)) apply to render both employing units subject employers?"

The facts show that W is a sole trader; they further evince a clear intention of H and W to go their separate ways in business. They each attempt to make an outright gift of the community interest in cafes X and Y. There is, however, a prohibition on the gift of future earnings, ante, question (f). The law as stated in 23 Tex. Jur. p. 30:

"It must be admitted that the free right to make gifts and conveyances of one's property, either to the other spouse or to another, accomplishes to an extent the same end that a change in the legal orders of descent would accomplish. But, viewed as an agreement merely, having for its object the change in the legal orders of descent, the contract is void; but viewed as a disposition of specific property, whether in existence or in expectancy, the transaction is valid. The latter transaction does not in legal contemplation change the heir; it merely avoids the inheritance by a deflection of the property."

The enforcement of any such contracts rests more on the principle of equity rather than on their intrinsic strength as a contract.

Perhaps, the court would recognize this agreement between H and W as valid at its inception, but we have serious doubts that the profits of X would be considered as the separate property of W. Thus, if the profits of the respective cafes went back into the businesses their character would in time revert to that of community. That being true, H would then again have the power to control the cafe X.

Hon. Orville S. Carpenter, page 6

If that situation obtains, the cafes X and Y would be employers under Section 17 (f) (4) of Article 5221-b, Revised Civil Statutes.

Fact situation No. 4.

"H and W are husband and wife. E owns one share of the total of fifty shares of the stock of a corporation. W owns twenty-six and one-half shares and A owns the remaining twenty-two and one-half. H operates another business which is the community property of H and W. If Subsection 19 (f) (4) of the Texas Unemployment Compensation Act (Art. 5221-b-17 (f) (4) ) applies, both the corporation and E are subject employers."

"Does the subsection last mentioned apply?"

The facts recited do not state whether W is operating in this instance as a sole trader. However, Article 1306 of Vernon's Revised Civil Statutes provides:

"Charters may be subscribed by married women who may be stockholders, officers and directors thereof; and their acts, contracts and deeds as such stockholders, officers and directors shall be as binding and effective for all the purposes of said corporation as if they were males. The joinder and consent of the husband and privy examinations separate and apart from him shall not be required."

Article 4714 provides:

"All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife. The wife shall have the sole management, control, and disposition of her separate property, both real and personal; provided however, the joinder of the husband in the manner now provided by law for conveyances of the separate real estate of the wife shall be necessary to the incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this law."

Thus, the wife has statutory right to control her separate property.

Does the requirement of this Article that the husband join the wife in the transfer of stocks give him such control as is intended in Section 17 (f) (4) of Article 5221-b. The requirement of H to join in the transfer does not give him the right to control. He could not vote the stock of W without her consent, nor could he claim the increased value of the stocks as community. Oglesby v. Potts, 40 S. W. (2d) 815.

We do not think H has such control of the corporation as to permit its grouping with the business of H for the purpose of assessing unemployment compensation taxes. Admittedly he does not own sufficient stock to control it and to say that W's ownership gives him control is repugnant to our statutes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Morris Hodges.*

Morris Hodges
Assistant

MH:N

APPROVED APR 27, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY [signature]
CHAIRMAN